

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34841-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EMANUEL ARCENIO PANTALEON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Emanuel Arcenio Pantaleon appeals a restitution order requiring

him to pay over $15,000 in medical expenses for gunshot injuries incurred by a man with

whom he engaged in a fistfight, but did not shoot. We find a sufficient causal connection

between the injuries and Mr. Pantaleon's second degree assault of the victim, even

though Mr. Pantaleon did not fire the injurious shots. We affirm.

FACTS AND PROCEDURAL BACKGROUND

Emanuel Arcenio Pantaleon, a member of the 18th Street Wicked Gangsters was

with others at a tavern in Walla Walla one evening when members of his group saw

Andres Solis, a former member of the 18th Street gang. Mr. Solis had testified in the trial

of Benito Gomez, also an 18th Street gang member, who is serving 115 years'

incarceration for murder. *See State v. Gomez*, 183 Wn.2d 29, 347 P.3d 876 (2015). The

State speculates that there was a standing order to kill or punish Mr. Solis if anyone from

the 18th Street gang saw him.

Whatever the reason, Mr. Pantaleon and his group, at least four of whom were

18th Street gang members, followed Andres Solis and his friend, Juan Martinez, to the

tavern's parking lot. As the group followed Mr. Solis, Mr. Pantaleon called him a "rata"

(Spanish for rat) and he struck Mr. Solis before he could enter his car. A fight ensued

between Mr. Pantaleon and Mr. Solis. Mr. Martinez intervened, trying to help Mr. Solis,

and was shot in the chest by Robert Arroyo, a member of Mr. Pantaleon's group. Mr.

Arroyo then shot Mr. Solis, who was by then on top of Mr. Pantaleon, still fighting. He

shot Mr. Solis in the leg, buttocks, hand, and chest. Mr. Martinez died from his wounds;

Mr. Solis survived.

The State charged Mr. Pantaleon with first degree murder, first degree assault, and

intimidating a witness. In a plea deal thereafter, Mr. Pantaleon pleaded guilty to second

degree assault and intimidating a witness.

Following sentencing, the State timely sought restitution from Mr. Pantaleon for

Mr. Solis's medical bills, which amounted to $15,248.37. Mr. Pantaleon argued that he

could only be required to pay restitution for injuries resulting from his assault, and the medical expense for which restitution was sought resulted from the shots fired by Mr. Arroyo.

In a consolidated hearing for Mr. Pantaleon and Mr. Arroyo, the trial court found that "[Mr. Pantaleon] set in motion a process that caused the injury," providing "enough of a causative link to satisfy the requirements of restitution." Report of Proceedings at 36-37. Mr. Pantaleon appeals the order of restitution.

## ANALYSIS

A sentencing court's authority to impose restitution is derived entirely from RCW 9.94A.753, which in relevant part provides that "restitution shall be ordered whenever the offender is convicted of an offense which *results in injury* to any person . . . unless extraordinary circumstances exist which make restitution inappropriate in the court's judgment." RCW 9.94A.753(5) (emphasis added). Our Supreme Court has construed the statute as requiring only a "but for" relationship between the offense and the injury, reasoning that "[t]he legislature intended 'to grant broad powers of restitution' to the trial court." *State v. Tobin*, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007) (citations omitted) (quoting *State v. Davison*, 116 Wn.2d 917, 920, 809 P.2d 1374 (1991)). Foreseeability is not required. *State v. Kinneman*, 155 Wn.2d 272, 285, 119 P.3d 350 (2005). The sentencing court assesses causation based not only on the category of crime charged but

3

also on the conduct giving rise to the charge. *State v. Landrum*, 66 Wn. App. 791, 799,

832 P.2d 1359 (1992), *abrogated in part on other grounds by State v. A.M.R.*, 147 Wn.2d

91, 51 P.3d 790 (2002).

The State is required to establish the causal connection between the restitution

requested and the defendant's crime by the preponderance of the evidence. *Kinneman*,

122 Wn. App. at 860 (citing *State v. Bunner*, 86 Wn. App. 158, 160, 936 P.2d 419

(1997)). We review a trial court's order of restitution for abuse of discretion. *Id.* at 523.

A trial court abuses its discretion when its decision is based on untenable grounds or

untenable reasons. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362

(1997).

Mr. Pantaleon likens his case to *State v. Hartwell*, 38 Wn. App. 135, 141, 684 P.2d

778 (1984), *overruled on other grounds by State v. Krall*, 125 Wn.2d 146, 881 P.2d 1040

(1994), in which this court reversed an order of restitution for medical expenses of

victims of an automobile accident that it found unrelated to the defendant's conviction for

leaving the scene of the accident. As the court explained:

> Had Hartwell stayed at the scene, thereby not committing the offense, the
> injuries presumably would have been the same. The statute specifically
> states that restitution may be ordered for "persons who may have suffered
> loss or damage by reason of the commission of the crime in question . . ."
> RCW 9.95.210. The losses here were not suffered by "reason of the crime
> in question."
>  . . . Had Hartwell been charged with negligent driving or driving
> while intoxicated, restitution may well have been appropriate. However,
> the driver's fault in causing the accident is independent of the charge of hit

4

and run. . . .  Restitution may not be based on acts connected with the crime charged, when those acts are not part of the charge.

*Id.* at 140-41.

The relationship between Mr. Pantaleon's conduct and Mr. Solis's injury is distinguishable from *Hartwell*'s facts.  One cannot say that if Mr. Pantaleon had not followed Mr. Solis into the parking lot, called him a rat, and assaulted him, Mr. Solis would have suffered the same injuries.  It was Mr. Pantaleon's actions that began an affray that quickly led to Mr. Arroyo shooting Mr. Solis, arguably in defense of Mr. Pantaleon.  We find no abuse of discretion.

Mr. Pantaleon asks this court to waive costs on appeal.  Under RAP 14.2, "[a] commissioner or clerk of the appellate court will award costs to the party that substantially prevails on review, unless the appellate court directs otherwise in its decision terminating review."  In order for the panel to exercise informed discretion, a general order of this division requires an appellant to request waiver of costs on appeal in his or her opening brief or by a motion filed and served within 60 days following the filing of the opening brief.[1]  If the appellant is alleging inability to pay, he or she is required by the general order to provide the trial court's indigency report and a report as to continued indigency and likely future inability to pay.  *Id.*

---

[1] *See* General Order of Division III, *In re the Matter of Court Administration Order re: Request to Deny Cost Award* (Wash. Ct. App. June 10, 2016), https://www.courts.wa .gov/appellate_trial_courts/?fa=atc.genorders&div=III.

Mr. Pantaleon has failed to file a report as to continued indigency. We therefore decline to consider his request, but without prejudice to his right to demonstrate to our commissioner his current or likely future inability to pay. *See* RAP 14.2.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Korsmo, J.

Pennell, A.C.J.